1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VALERIE HOWARD,

        Plaintiff,

  v.

CUMULUS MEDIA INC.,
SUSQUEHANNA RADIO CORP. and
DOES ONE through FIFTY, inclusive,

        Defendants.
_____/

No. C 12-4880 CRB

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT**

      Before the Court is Defendant Cumulus Media's ("Cumulus") motion for summary judgment in this action arising from the termination of Valerie Howard ("Howard") from her position at Cumulus. Howard brings discrimination and retaliation claims under California's Fair Employment and Housing Act (FEHA) alleging (1) she was fired because she suffered from breast cancer; and (2) she was fired in retaliation for taking medical leave. Having considered the parties' arguments and the entire record of this case, the Court GRANTS Cumulus's Motion for Summary Judgment.

## I.  BACKGROUND

      Howard commenced employment with Cumulus as a General Sales Manager for the KSAN and KFOG radio stations in March of 2007. Howard Decl. ¶ 9 (dkt. 48). Prior to joining Cumulus, Howard had worked in radio sales in the Bay Area for nearly 31 years. Opp'n at 1 (dkt. 46).

In her position as General Sales Manager, Howard oversaw sales and revenue, recruited and trained sales staff, and managed her sales team. Howard Decl. ¶ 10. Howard was well compensated for her work. She started her employment with Cumulus at a salary of $235,000 and received a raise to $240,000 in early 2008. Id. During her first nine months with Cumulus, Howard reported directly to Market Manager Tony Salvadore, who in turn reported to Co-Chief Operating Officer Jon Pinch at Cumulus's headquarters in Atlanta. Id.

Starting in 2008 and continuing through 2009, the market for radio ad sales declined. Howard Dep. at 36:15-19, 71:4-7, 72:6-10 (dkt. 47-1). Ratings dipped for the KSAN and KFOG stations, and a change in the industry standard rating systems exacerbated the problem. Id. at 71:4-7; Pinch Dep. 46:1-7 (dkt. 47-9). Cumulus began making changes in an effort to reduce expense. On a national scale, Cumulus implemented a major restructuring of the sales teams. Howard Decl. ¶ 12. As part of the restructuring, Salvadore's position was eliminated and his responsibilities were assumed by Vice President and Director of Sales, Peter Schwartz. Howard Decl. ¶ 12. After Salvadore's departure, Howard reported directly to Schwartz. Id.

By late summer 2009, Howard was left as one of two General Sales Managers in San Francisco. Howard Dep. 15:13-16, Ex. 1 (org. chart). As a General Sales Manager, Howard managed two Local Sales Managers, one for each of the KSAN and KFOG stations. Id. Howard had previously supervised a National Sales Manager as well (responsible for sales outside of the Bay Area), but the National Sales Manager positions were eliminated in 2008. Howard Dep. 37:9-10, 102:1-6. Howard was not aware of plans for additional restructuring or layoffs, and she reported a good working relationship with Schwartz. Howard Decl. ¶ 12.

In late August 2009, Howard learned that she had been diagnosed with breast cancer. Id. ¶ 14. On the morning of September 2, Howard informed Schwartz of her diagnosis. Id. ¶ 18. She confirmed that surgery was scheduled for the following week, and confirmed she would need medical leave thereafter. Id. Following her meeting with Schwartz, Howard also spoke to Stacey Haysler, Cumulus's HR representative. Id. ¶ 19. According to Howard, Haysler "loaded her up" with forms and information pamphlets regarding medical leave. Id.

In the months leading up to Howard's cancer diagnosis, Schwartz and Pinch had discussed the "possibility" of eliminating Howard's position. Schwartz Dep. at 51:1-17, 52:18-22; Pinch Dep. 32:18-25, 33:18-25. The details and certainty of the discussions are unclear, and Howard was not made aware that she was being considered for termination. What is clear, is that Schwartz and Pinch did not communicate an official decision until the morning of September 8, at which time Schwartz informed Haysler that Howard would be terminated. Haysler Dep. at 35:9-19.

Haysler claims she was unaware of Howard's diagnosis when Schwartz informed her of the decision to terminate Howard. Id. at 38:8-24. She states that Howard first came to her about medical leave later in that same day. Id. Further, Haysler claims that immediately upon learning of Howard's diagnosis, she informed Schwartz that the termination should be delayed. Id. at 39:18-25. Schwartz agreed with Haysler, and after conferring with Pinch, the decision to terminate Howard was officially delayed. Id. at 41:5-21, 94:16-22.

Howard had surgery on September 10, and took medical leave through October 11. Howard Decl. ¶ 24. On October 12, Howard began intermittently working from home between treatments. Id. Howard kept Cumulus aware of her work schedule, and as best as possible, participated in all her regular job functions. Id. ¶ 26. Despite Howard's efforts, Schwartz and Pinch expressed concerns that work was going undone. Schwartz Depo. 65:14-66:4.

On February 15, Howard returned to the office full time. Howard Decl. ¶ 28. Howard's co-workers prepared a "Welcome Back" banner which they signed and presented to her at the office. Id. Schwartz did not sign the banner, and Howard "felt a huge change" in Scwartz's demeanor towards her following her return. Id. ¶ 30. Howard stated that Schwartz limited his contact with her, was unavailable to talk, and regularly engaged her direct subordinates without consulting her. Id. ¶¶ 29-35.

In late February 2010, Schwartz asked Howard to hire a new Local Sales Manager to replace a recently departed Local Sales Manager. Id. ¶ 36. Howard offered to assume the position's responsibilities in order to limit expense, but Schwartz stated that was not

necessary. <u>Id.</u> Howard interviewed and hired Maura Donohue to fill the position. <u>Id.</u> ¶ 37. Donohue was a woman close to Howard's age with a similar skill set. <u>Id.</u> Donohue was hired at a salary of $175,000. <u>Id.</u> ¶ 38.

As of July 2010, it was increasingly clear to Schwartz and Pinch that KFOG and KSAN were missing revenue marks. Schwartz Dep. at 89:2-11, 110:1-4. Accordingly, they discussed a plan to swap Howard's position for a National Sales Manager. The National Sales Manager would be paid substantially less than Howard, and Schwartz recognized that the addition of a national presence to the sales team had the potential to increase out-of-market revenues. Schwartz Dep. at 91:23-92-24. On September 13, 2010, Cumulus management announced that Joe Cariffe had been hired to fill the National Sales Manager position. Howard Decl. ¶ 42. Cariffe was hired at a salary of $170,000. Schwartz Dep., Ex. 32. Prior to the announcement, Howard knew that the National Sales Manager position was being added, but she did not apply for the position because she did not know that her position would be eliminated. <u>Id.</u>

On September 13, the same day as Cariffe's hiring, Howard learned that her position was being eliminated. <u>Id.</u> ¶ 44. Howard asked Schwartz about other available positions within the company, but Schwartz stated that no other positions were available. <u>Id.</u> ¶ 47. Schwartz later stated that he did not consider Howard for the Local or National Sales Manager positions because each position would represent a substantial demotion in status and pay for Howard. Schwartz thought it better to start fresh at each position. Schwartz Dep. at 149:7-14.

In addition to Howard's cancer diagnosis, the cancer diagnosis of Michelle Mercer, a traffic manager with Cumulus, is also relevant to this matter. In March 2009, Mercer was slated to be laid off by Cumulus. Prior to Cumulus executing the termination, Mercer was diagnosed with cancer. She informed Cumulus of her diagnosis and her need for treatment, and Cumulus delayed the termination to facilitate her care. Haysler Depo. at 177:7-14. Mercer took medical leave, received treatment and ultimately returned to work. During her absence, it became clear to Cumulus management that Mercer filled an important role with

4

the company and should be retained. Haysler Dep. at 179:19-180:2. Accordingly, Cumulus management made the decision to cancel Mercer's termination and terminate another employee in Mercer's department instead. Id.

## II.    LEGAL STANDARD

The Court can grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

## III.   DISCUSSION

Cumulus now moves for summary judgement on Howard's four causes of action: (1) discrimination based on medical condition under FEHA; (2) discrimination based on medical condition in violation of public policy as stated in the FEHA; (3) retaliation under FEHA; and (4) retaliation in violation of public policy as stated in the FEHA. See generally MSJ.

### A.    Discrimination Based On Medical Condition

Howard's first and second causes of action allege that her termination constituted discrimination based on her medical condition in violation of the FEHA, Cal. Gov't Code § 12940(a),[1] and California public policy.[2] In analyzing discrimination claims under the FEHA, California courts employ the burden shifting analysis set forth by the Supreme

---

[1] Providing in relevant part: "It is an unlawful employment practice . . . (a) For an employer, because of . . . medical condition, . . . to discharge the person from employment."

[2] Because the public policy at issue in Howard's second claim is founded in the FEHA, the same analysis applies to both the first and second claim. See City of Moorpark v. Superior Court, 18 Cal. 4th 1143, 1161 (1998); Dep't of Fair Employment and Housing v. Lucent Techs., 642 F.3d 728, 748-49 (9th Cir. 2011). Accordingly, the Court considers both claims together.

Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Guz v. Bechtal Nat'l Inc.</u>, 24 Cal. 4th 317, 354 (2000) ("Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes."); <u>Bradley v. Harcourt, Brace and Co.</u>, 104 F.3d 267, 271 (9th Cir. 1996) (same). The burden shifting analysis "reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially." <u>Guz</u>, 24 Cal. 4th at 354. Accordingly, the analysis calls for "successive steps of increasingly narrow focus" to "allow[] discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." <u>Id.</u>

Under the burden shifting test, a plaintiff must first establish a prima facie case of discrimination ("PFC"). <u>See</u> <u>id.</u> ("This step is designed to eliminate at the outset the most patently meritless claims, as where the plaintiff is not a member of the protected class or was clearly unqualified . . . ."). In a medical disability action under the FEHA, the elements of the prima facie case include "(1) that [plaintiff] is a disabled person within the meaning of the FEHA; (2) that [plaintiff] is qualified, with or without reasonable accommodation . . . ; and (3) that the employer terminated [plaintiff] because of [the] disability." <u>Bradley</u>, 104 F.3d at 271; <u>see also</u> <u>Guz</u>, 24 Cal. 4th at 355 ("[Plaintiff] must at least show actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a [prohibited] discriminatory criterion.") (internal citations and quotations omitted).

If a plaintiff succeeds in establishing the prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to present admissible evidence demonstrating a legitimate nondiscriminatory reason for its actions. <u>Guz</u>, 24 Cal. 4th at 355-56. If the defendant is successful, the presumption of discrimination falls away, and the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reasons are pretexts for discrimination. <u>Id.</u> at 356. The plaintiff can establish pretext "by either [1] directly persuading the court that a discriminatory reason more likely motivated the employer or [2] indirectly by showing that the employer's proffered explanation is unworthy of

credence." Aragon v. Republic Silver State Disposal Co., 292 F.3d 654, 658-59 (9th Cir. 2002) (internal quotation marks omitted). "[V]ery little" direct evidence of discriminatory motive is required; and if circumstantial evidence is offered, such evidence has to be "specific" and "substantial" to create a triable issue. Godwin v. Hunt Wesson Inc., 150 F.3d 1217, 1222 (9th Cir. 1998); Little v. Windermere Relocation, Inc., 301 F.3d 958, 971 (9th Cir. 2002).

Cumulus limits its discrimination argument to two points. First, Cumulus argues that Howard fails to create a triable issue as to the third element of the PFC, the causal connection between Howard's medical condition and Cumulus's decision to terminate Howard. Second, and in the alternative, if the PFC is established, Cumulus argues Howard fails to create a triable issue as to Cumulus's non-discriminatory reason for Howard's termination. Assuming, without deciding, Howard has established all three elements of her PFC, the Court finds Cumulus's second argument persuasive.

### 1. Cumulus's Non-Discriminatory Justification For Howard's Termination

To satisfy the burden of establishing a non-discriminatory justification for Howard's termination, Cumulus argues that Howard was terminated based on economic concerns and sound business judgment. Mot. at 16. Cumulus offers evidence suggesting that, during Howard's employment, Cumulus was an "extremely cost conscious company" facing "dwindling ratings and declining revenue." Haysler Dep. at 169:22-26 During the period of economic decline leading up to Howard's termination, evidence suggests that Cumulus terminated numerous employees, not just Howard. Pinch Dep. at 18:13-20; Schwartz Dep. at 27:4-5; Haysler Dep. at 176:20-24, 183:4-12. Cumulus offers evidence that high salaried employees were targeted for layoffs in order to maximize cost savings, Haysler Dep. at 177:22-178:1; Howard Dep. at 70:20-22; Schwartz Dep. at 27:4-5, and that Howard was one of Cumulus's highest-salaried employees in San Francisco during July 2009. Moreover, Cumulus offers evidence suggesting that Howard's role as a "manager over managers" removed her from client relationships that drive revenue, and as a result, rendered her position "less valuable." Pinch Dep. at 32:13-17.

7

In articulating a non-discriminatory justification for Howard's termination, Cumulus "need not persuade the court that it was actually motivated by the proffered reasons," but simply has the burden to "raise a genuine issue of fact as to whether it discriminated against the plaintiff." Texas Dep. of Comm. Affairs v. Burdine, 450 U.S. 248, 254 (1981). Here, Cumulus's proffered evidence regarding economic motivations for Howard's termination is sufficient to satisfy its burden. Accordingly, the presumption of discrimination "falls away," and the burden shifts back to Howard to demonstrate that Cumulus's proffered reasons are pretexts for discrimination.

### 2.    Howard Fails To Establish Pretext

To satisfy her burden at the pretext stage, Howard "must produce evidence in addition to that which was sufficient for her prima facie case." Godwin, 150 F.3d at 1220. Howard's evidence may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. (quoting Burdine, 450 U.S. at 256). If direct evidence of discrimination is offered, "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." Id. at 1221. In contrast, if Howard offers circumstantial evidence of discrimination in support of pretext, "it must be specific and substantial . . . to create a triable issue" regarding Cumulus's intent. Id. Here, Howard falls short on both fronts.

First, Howard fails to provide direct evidence of discrimination. "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." Id. at 1221 (quotations omitted) (finding direct evidence of sexual discrimination where employee stated he "did not want to deal with another female"); see also, Lindahl v. Air France, 930 F.2d 1434, 1438 (9th Cir. 1991) (finding direct evidence of sexual discrimination where employer stated female candidates get "nervous" and "upset"); Cordova v. State Farm Ins. Comps., 124 F.3d 1145, 1150 (9th Cir. 1997) (finding direct evidence of race discrimination where employer referred to employee as "dumb mexican"). Howard offers no direct evidence in which Cumulus acknowledges terminating Howard

based on her medical condition. In fact, the only direct evidence as to actions taken in reliance on Howard's condition was Cumulus's decision to delay Howard's termination.

Second, Howard fails to provide circumstantial evidence that is "specific and substantial" to rebut Cumulus's non-discriminatory justification. Howard sets forth a number of arguments attempting to demonstrate through circumstantial evidence that Cumulus's justification is pretext, all of which are deficient.

### a.      Howard Argues That Cumulus Was Not Suffering Economically

Howard argues that Cumulus was not suffering economically at the time of Howard's termination, and therefore, Cumulus's "cost conscious" justification should be recognized as pretext for discrimination based on Howard's medical condition. Opp'n at 19. In support of her argument, Howard cites Schwartz's testimony and alleges that the 2009 ratings for KSAN and KFOG were not suffering. Opp'n at 19-20. However, Schwartz's testimony offers no such confirmation, and alternative evidence suggests that Howard herself was aware of the stations' struggling ratings.[3] Howard also offers evidence in the form of her own testimony that Cumulus's San Francisco group was the "biggest revenue producer that Cumulus owned, with significant gross revenues and profit margins." Opp'n at 20. But, again, Howard's evidence does not support her argument. Howard's declaration speaks only to the size of the market in San Francisco and the city's revenue generating prospects as compared to smaller markets. Howard's evidence does not address Cumulus's contention that revenues were diminishing relative to prior years and that expenses remained high in light of changing market conditions.

### b.      Howard Argues That Cumulus Hired New Employees

Howard argues that Cumulus's justification for terminating her is belied by evidence that Cumulus hired new employees around the time Howard was terminated. First, Howard points to the hiring of Maura Donohue as Local Sales Manager in the Spring of 2010. Opp'n

---

[3] See Howard Dep. at 69:22-25 ("KFOG at one point would have been quite a bit higher, but because the ratings had gone down, down, down during my tenure at the end, I can't imagine that KFOG had higher rates.").

at 21.  Howard suggests that she offered to incorporate the Local Sales Manager's responsibilities into her own role in order to save Cumulus money, and contends she would have applied for the Local Sales Manager position had she known her own job would be eliminated.

Despite Howard's contentions, evidence regarding the hiring of Donohue does not rebut Cumulus's non-discriminatory justification.  Evidence suggests that Donohue was hired at an annual salary of $175,000–approximately $65,000 less than Howard's $240,000 salary at the time of her termination.  Howard Decl. ¶ 36; Opp'n at 21; Howard Dep., Ex. 9. In light of Cumulus's plan to eliminate Howard's position, hiring Donohue at a lesser salary is consistent with Cumulus's stated goal of reducing expense.  Further, when an employer eliminates a position for "economic reasons, it incurs no duty to transfer the employee elsewhere in the company."  Rose v. Wells Fargo & Co., 902 F.2d 1417, 1423 (9th Cir. 1990).  Cumulus offers evidence that Howard was not considered for the Local Sales Manager position because the transition from her General Sales Manager position would have entailed a dramatic cut in pay and status.  Cumulus management stated a preference to hire someone "fresh" in the position, Schwartz Dep. at 149:7-14, and barring additional evidence of discriminatory motive, Cumulus is free to make such a choice.

Next, Howard points to the hiring of Joe Cariffe in the National Sales Manager position as evidence of pretext.  Opp'n at 21.  But again, the economics of the hire undercut Howard's contention.  Cariffe was hired at a salary of $170,000–approximately $70,000 less than Howard's salary at the time of her termination.  See Opp'n at 21; Schwartz Dep., Ex. 32 (setting forth Cariffe's compensation package).  Howard alleges that she was more qualified for the position than Cariffe, but Cumulus does not claim that Howard's lack of qualifications or sub-par performance motivated the personnel change.  Instead, hiring Cariffe at a much lower salary is consistent with Cumulus's stated non-discriminatory justification of seeking to reduce expenses during difficult economic times.  Howard contends that Cariffe was hired immediately before her termination in order to prevent her from applying for the National Sales Manager position, Opp'n at 22; but Howard's

subjective belief regarding Cumulus's timing is insufficient to carry her burden of creating a triable issue of fact regarding pretext. See Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 n.6 (9th Cir. 2006).

Because eliminating Howard's position represented significant cost savings for Cumulus, even after new employees were hired, Howards's evidence does not undercut Cumulus's non-discriminatory justification.

### c. Howard Argues That Cumulus Offered Other Employees Demotions In Lieu Of Termination

Howard argues that other employees at Cumulus were offered demotions in lieu of termination, and that Cumulus's refusal to offer her alternative employment is evidence of discrimination. Opp'n at 23. However, Howard's general premise is undercut by evidence that Michelle Mercer, another employee suffering from breast cancer, was allowed to remain in her position without demotion. Mot. at 13.

Mercer was a traffic manager with Cumulus and was slated for layoff in March 2009. Haysler Dep. at 176:20-24. Prior to Mercer's termination, she was diagnosed with breast cancer, and because of her diagnosis, Cumulus management decided to delay her termination until she returned from medical leave. Id. at 177:7-12. Upon Mercer's return to work, Cumulus management changed course and decided to cancel Mercer's termination. Id. at 179:19-180:2. Management concluded that Mercer was too important to let go and retained her at her current salary. Id. Another high-paid employee in Mercer's department, one not suffering from cancer, was terminated instead. Id.

In Howard's effort to compare her own termination to the termination of other employees, Mercer is the most analogous comparator. Just like Howard, Mercer's termination was delayed when she was diagnosed with breast cancer. But unlike Howard, Mercer's position was not ultimately eliminated. Cumulus's decision to retain Mercer at her current salary undercuts Howard's argument that she was terminated and denied alternative options for employment because of her medical condition. Further, Cumulus's decision to terminate another employee in Mercer's department is consistent with Cumulus's non-discriminatory cost-cutting justification.

### d. Howard Argues That Cumulus Treated Her Poorly During And After Her Medical Leave

Howard's final argument attacking Cumulus's non-discriminatory justification contends that Howard was treated "terribly" upon her return from medical leave. Opp'n at 23-24. Howard argues that, evidence of terrible treatment demonstrates that she was actually terminated because of her medical condition. Id. Here, too, Howard's argument is unpersuasive.

Howard supports her contention with evidence that Schwartz rarely communicated with her about business while she worked from home, failed to sign her "Welcome Back" sign, acted aloof and distant when she returned to the office, refused to give her assignments she previously handled, and acted "incredibly cold" to her at a meeting in Atlanta. Opp'n at 23-24. Howard's proffered evidence is deficient because it relies exclusively on her own subjective interpretations to support her contention. Howard cannot "create a genuine issue of material fact by relying solely on her subjective belief that the challenged employment action" was discriminatory. Cornwell, 439 F.3d at 1028 n.6. Moreover, because Howard attempts to refute Cumulus's nondiscriminatory justification with circumstantial evidence of discrimination, that evidence must be sufficiently "specific and substantial" to create a triable issue of fact. Id. at 1029. Here, Howard's evidence is neither specific nor substantial, and does not rebut Cumulus's non-discriminatory justification or demonstrate that the alleged behavior was motivated by discrimination.

In sum, Howard fails to carry her final burden of establishing pretext. Accordingly, the Court GRANTS Cumulus's motion for summary judgement with regard to Howard's claims of discrimination under the FEHA and discrimination in violation of public policy.

## B. Retaliation

Howard's third and fourth causes of action allege that her termination constituted retaliation under the FEHA, Cal. Gov't Code § 12940(a), and California public policy.[4] The

---

[4] Again, because the public policy at issue in Howard's third claim is derived from the FEHA, the analysis for the third and fourth claims is the same. See City of Moorpark v. Superior Court, 18 Cal. 4th 1143, 1161 (1998); Dep't of Fair Employment and Housing v. Lucent Techs., 642 F.3d 728, 748-49 (9th Cir. 2011). Accordingly, the Court considers the third and fourth claims together.

FEHA prohibits employers from discharging "any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov. Code § 12940(h).

To sustain a claim for retaliation under the FEHA, Howard bears the initial burden of establishing a PFC by offering evidence suggesting that: (1) she engaged in an oppositional activity; (2) Cumulus subjected her to an adverse employment action; and (3) a causal link exists between the oppositional activity and the adverse action. See Manatt v. Bank of Am., 339 F.3d 792, 800 (9th Cir. 2003). If Howard establishes the PFC for retaliation, the burden shifts to Cumulus to offer evidence in support of a legitimate, non-discriminatory reason for the adverse employment action. Id. If Cumulus succeeds in establishing a non-discriminatory reason, Howard bears the ultimate burden of offering evidence demonstrating that Cumulus's purported non-discriminatory reason was merely pretext for discrimination. Id.

Cumulus argues that Howard's retaliation claim fails because she did not engage in a protected activity under the FEHA, and therefore she has not established the first prong of her retaliation PFC. In response, Howard offers two grounds for establishing oppositional activity: (1) she took medical leave and (2) she requested accommodation for her medical condition following her return to work. Because the evidence does not suggest that Howard engaged in a qualifying oppositional activity, she fails to establish a retaliation PFC.

Claims of retaliation under the FEHA must be supported by evidence suggesting the plaintiff "opposed [a] practice forbidden under the [FEHA]." See Cal. Gov. Code § 12940(h). Neither taking medical leave nor seeking accommodation for a medical condition constitute an activity in opposition to practices forbidden by the FEHA. See Huck v. Kone Inc., No. C 10–01845 RS, 2011 WL 6294466, at *6 (N.D. Cal. Dec. 15, 2011) (holding that exercising the right to accommodation and taking medical leave under the FEHA are not protected activities because "they do not formally or informally oppose employer discrimination"); Flores v. Cal. Pac. Med. Ctr., No. C04-1864 MMC, 2005 WL 2043038, at *6 (N.D. Cal. Aug. 24, 2005) (stating that retaliation claim under the FEHA

becomes colorable when plaintiff is denied accommodation and then <u>opposes</u> the denial–plaintiff's mere request for accommodation is not an oppositional activity); <u>Anderson v. Am. Airlines, Inc.</u>, No. C 04-4649 CW, 2005 WL 1712040, at *6 (N.D. Cal. July 20, 2005) ("Plaintiff's fifth cause of action . . . states that she was retaliated against for taking medical leave. Taking medical leave is not oppositional activity."), <u>aff'd in part, rev'd in part</u>, 252 Fed. App'x 166 (9th Cir. 2007).  Both actions involve the exercise of an employee's right, and under the FEHA, until that right is wrongfully denied or discouraged, an employer has not engaged in a forbidden practice that can be opposed.

Here, Howard offers no evidence that she opposed Cumulus practices that were forbidden under the FEHA.  To the contrary, uncontroverted evidence suggests that Cumulus granted Howard medical leave[5] and reasonably accommodated her needs following surgery.[6] Howard's only evidence of a complaint or opposition to Cumulus's actions is her "testi[mony] that she immediately went to Haysler after receiving her termination email to try and resolve the matter."  Opp'n at 25 n.23.  But the alleged adverse employment action in that instance was Howard's termination.  Because that decision was made prior to Howard approaching Haysler, it cannot be the basis for her retaliation claim.

Because Howard fails to offer evidence sufficient to create a triable issue as to the first element of her PFC for retaliation, Cumulus's motion for summary judgment with regard to Howard's retaliation claim is GRANTED.

/

/

/

---

[5]  <u>See</u> Howard Decl. ¶ 24 ("I had surgery on September 10, 2009.  I was on medical leave from September 10, 2009 through October 11, 2009.")

[6]  <u>See</u> Howard Decl. ¶ 24 ("On October 12, 2009, I started working again from home.  During my treatment I worked remotely and took intermittent leave."), ¶ 26 ("[While working from home], I regularly communicated with my staff, participated in weekly sales meetings remotely, signed most sales orders, set pricing, monitored commercial inventory and sellout levels . . . and was fully engaged in work.").  Even if Howard were to argue that working from home was insufficient accommodation, there is no evidence that she voiced concerns to Cumulus.  Complaining about or offering opposition to the insufficient accommodation is required under the FEHA before Cumulus's conduct can be considered retaliation.  <u>See</u> <u>Flores</u>, 2005 WL 2043038, at *6.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment in its entirety.

**IT IS SO ORDERED.**



Dated: November 1, 2013

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE